OPINION OF THE COURT
Melvyn Tanenbaum, J.
These Election Law (art 16) proceedings to set aside the election of officers of the Executive Committee of the Suffolk County Committee of the Conservative Party of New York State and related relief were dismissed at Trial Term (De Luca, J.). Upon appeal the Appellate Division reversed on the law and facts and remitted the proceedings to this court for a hearing and determination of the following issues: (1) Which version of two amendments to the party rules limiting the eligibility of certain persons to act as party officers was adopted at the October 3,1982 reorganization meeting? (2) Are either or both respondent Haar or petitioner Leirer, the competing candidates for the office of chairman, disqualified as candidates as a result of such amendments? (3) When, if at all, were such amendments filed with the State and Suffolk County Boards of Elections? (4) Does the final vote tally filed with the Suffolk County Board of Elections in relation to the October 3, 1982 election for chairman accurately reflect the votes attributable to each election district? (5) Does a tally of the properly weighted votes show petitioner Leirer to be the duly elected chairman? (6) Did respondent Greene fail to notify a sufficient number of committeepersons thus rendering the adjourned reorganization meeting of October 14, 1982 a nullity?
After trial the court makes the following findings of fact and reaches the following conclusions of law:
On October 3,1982, the Suffolk County Committee of the Conservative Party of New York State held an organizational meeting pursuant to section 2-112 of the Election Law, article VII of the Rules and Regulations of the Conservative Party of New York State (State Rules) and arti *293 ele 3 of the Rules and Regulations of the Suffolk County Committee of the Conservative Party of New York State (County By-laws). After the filling of vacancies in individual district posts of county committeepersons, two sets of amendments to the by-laws were proposed and adopted by separate resolutions and balloting. The first set which by stipulation of the parties was filed with the County Board of Elections within 10 days of its adoption, was passed in the following form:
“amendment I
“The county chairman, vice chairman, secretary and treasurer cannot hold office if they hold an appointed or elected salaried position with town, county, state or federal government.
“AMENDMENT II
“A town leader or vice chairman holding an appointed or elected position in town, county, state or federal government, cannot vote on the executive board.”
Subsequent to the adoption of these amendments at the October 3, 1982 meeting, a further motion resulted in the adoption of a second set of amendments as follows:
“Section 3a (1) Article III
“All officers of the Suffolk County Conservative Party shall be prohibited from holding office if that individual holds any appointed or elected political position that is salaried.
“Section 3b (2) Article III
“Any voting member of the Executive Committee of the Suffolk County Conservative Party shall be prohibited from holding office if that person receives any remuneration from any federal, state or municipal government or any subdivision thereof either appointed, elected or subcontracted. This shall include referrals from any court system or subdivision thereof.”
This second set, as the parties have further stipulated, was not filed with either the County or State Boards of Elections.
An issue was raised as to whether all votes cast at the meeting were cast in compliance with the committee’s *294 attendance record rule requiring committeepersons to sign attendance records on separate sheets maintained for each town within the county (County By-laws, art IV, § 2). Uncontroverted testimony established that the committeepersons following arrival at the October 3 reorganization meeting signed such attendance sheets. These sheets were ultimately in the custody and control of the Meeting Chairman Greene (the outgoing party chairman). When the meeting was disrupted by disputes and the apparent absence of a quorum, the competing factions agreed to safeguard the meeting papers by turning them over to the police. In the ensuing confusion Greene turned over some of the meeting papers for delivery to the police, but apparently omitted the sign-in sheets for the Towns of Huntington, Brookhaven and Southold. These sheets were found weeks later by petitioner Leirer (who was acting as the secretary of the meeting) among other party papers turned over to her by Greene at the end of the meeting. Although the missing sign-in sheets were misplaced, they were properly authenticated and produced. Their temporary misplacement does not nullify the vote taken on the amendments or any other actions since there was no evidence that such sign-in sheets were not the ones utilized at the meeting in compliance with party rules.
With respect to the remanded issues concerning the adoption of amendments to the rules, section 2-114 of the Election Law provides in pertinent part: “§ 2-114. Committees; rules of 1. Each committee may prepare rules for governing the party within its political unit. Within ten days after the adoption of any rule or amendment thereto a certified copy thereof shall be filed by * * * the county committee in the office of the state board of elections, and in the office of the board of elections of the county * * * No rule or amendment thereof shall be effective until the filing thereof in the office of the state board of elections.”
The parties stipulated that neither set of purported amendments was filed with the State Board of Elections. Although failure to observe the 10-day filing limitation would not cause an adopted rule to be declared a nullity by this court since the statute does not provide for such sanction (see Matter of Casey v Nuttall, 62 Misc 2d 386), the *295 total failure to file either set of adopted amendments with the State Board of Elections created a situation where, even if deemed adopted, neither rule was effective (Matter of Bertan v O’Neill, 83 AD2d 984). The court need not additionally consider whether the purported filing of the amendment by Greene with the County Board of Elections was proper in the face of section 2 of article 3 of the County By-laws which designates the committee secretary as the person responsible for filing all reports required by law.
Aside from procedural filing defects there are other issues which need be considered by the court. While it was uncontroverted that a quorum existed at the time of the votes on the two sets of amendments, there remains a question of the propriety of Greene’s refusal to permit a roll call vote. During the course of voting on the first set of amendments, petitioner Leirer moved for a roll call vote consonant with section 5 of article IV of the County Bylaws. Greene denied this request. Leirer then made a motion to appeal the ruling of the chair, seconded by Mr. Walsh. This would have permitted the body as a whole to review Greene’s action (Roberts Rules of Order, § 24, as incorporated by reference in County By-laws, art VII). Instead Greene stated that this was out of order and prevented any consideration of his actions. Greene then continued the voting, which by a show of hands resulted in 189 votes for adoption, 173 against and 30 abstentions. There were two important results of Greene’s act. First there was no way of securing a proper determination concerning the vote on the first set of amendments. This was caused by the fact that each election district committeeperson represented and cast a vote weighted differently in each district. Thus, without knowing the weighted votes to be applied to the count of hands, the court is incapable of ascertaining the arithmetic results of voting on the first set of amendments. Second, Greene’s refusal to permit the convention as a whole to review his ruling on the call for a roll call vote was without authority. Roberts Rules of Order provide that: “By one member making (or ‘taking’) the appeal and another seconding it, the question is taken from the chair and vested in the assembly for final decision.”
The net result was that petitioner and those with similar points of view were deprived of procedural due process and *296 their First Amendment rights. Moreover, Greene’s ruling had a chilling effect which pervaded the consideration of and voting on the second set of amendments and precipitated the onset of the disintegration of the regularity of the meeting. This constitutional deprivation resulted as well in the infirmity and invalidity of the attempted adoption of the second set of amendments.* Therefore, neither candidate was or is disqualified from seeking the post of chairman.
With respect to the remaining issues the court finds that after the balloting on the amendment questions an election of a party chairman was attempted to be held. As noted in this opinion, the testimony established that committeepersons’ votes from the Towns of Huntington, Brookhaven and Southold were required to be considered notwithstanding the temporary misplacement of the sign-in sheets. In addition, the testimony established that the disputed Town of Huntington (42 ¥2 votes) and Town of Southold (31 votes) claimed by petitioner Leirer should have been included in the projected tally as Huntington Committeepersons Gregory O’Regan, Carol O’Regan, Maureen O’Regan and Flo Dimino properly registered their attendance as did Southold Committeepersons Mary Lukeman and Cyril Lukeman.
Also to be included in the projected votes claimed by respondent Haar from the Town of Babylon are those from Committeepersons Debra Sottile, Leo Sottile, Patricia Schaefer, Bruce Bruno, Justo Campo, Nick Maris and Mary Dunn totaling 74 votes. Objections that these committeepersons were not properly elected or appointed were unfounded. Moreover, the further claim that appointed committeepersons could not participate unless they first signed an affidavit of consent to the appointment is without merit as there was no party rule or regulation duly enacted requiring such affidavit. A custom to such effect followed by the Executive Committee ofttimes is not the functional equivalent of a party rule or regulation.
*297 These votes when added to the totals to which the parties have stipulated would result in a total of 2,895.5 votes for petitioner Leirer and 2,872 votes for respondent Haar. The testimony established that this final tally relates to the vote taken at approximately 2:00 a.m. after approximately 15 separate tallies. By that time, after the instability at the time of the consideration of the proposed amendments to the rules the meeting had become what the witnesses characterized as “in chaos”, drunks abounded, and the police were called to remove a person with a gun.
The court need not make a judgment concerning the efficacy of this last projected total, for the parties themselves made a judgment. It was the judgment of these competing candidates that no quorum then existed. They accordingly attempted to arrange a further meeting to complete the election. They also undertook to attempt to safeguard the sign-in and other papers with the results previously described.
It is clear, therefore, that a chairman was not elected at this first meeting.
The parties attempted to arrange the mechanics for this second meeting and to provide for the responsibility for selecting a meeting site and for the sending of appropriate notices. It was important in their view that the meeting hall be a place where liquor would be unavailable and that Party Secretary Stephen Roberts be the person to provide and mail the formal notice of the second meeting. Notwithstanding these discussions the temporary Chairman Greene on October 8, 1982, filed a certificate with the County Board of Elections setting forth that Haar was the elected chairman of the County Committee. This act and Haar’s assumption of the office are without legal effect. Greene as outgoing chairman could continue according to the party rules to preside until a binding election occurred (State Rules, art VII, § 3; County By-laws, art IV, § 1). Greene was thus empowered to select the meeting place and time and to cause the meeting notices to be sent (County By-laws, art IV, § 2) notwithstanding the earlier agreement of the competing candidates to the contrary. Greene directed Haar to send meeting notices for a second meeting called for October 14, 1982. Haar testified that he *298 sent 1,117 meeting notices, which was less than the total number of committeepersons because he did not have the addresses of some of the committeepersons appointed to vacancies at the first meeting. By stipulation of the parties the total number of committeepersons elected was 1,090. The testimony is in conflict as to whether by adding appointed committeepersons the total membership was 1,165 or 1,172. By any view of the evidence the court concludes that a proper notice of meeting was reasonably attempted to be sent to a sufficient number of committee-persons to result in a properly called meeting for October 14. The claim that one of the town leaders, consonant with his view that the meeting was called improperly, advised his supporters to absent themselves, is inadequate as a basis to nullify the results of the meeting.
At the October 14 meeting respondent Greene in his capacity as temporary chairman declared Haar to be the newly elected chairman and turned the chair over to him. When Haar was questioned about the presence of a quorum he ruled the questioner out of order, declaring that a quorum was not necessary since the meeting was merely a continuation of the one held on October 3, 1982. The court does not agree. Moreover, the court holds that the October 14 meeting and all business at that meeting occurred without legal effect, for no quorum was present and the meeting was not conducted by a proper officer.
In view of the court’s ruling concerning the election of a chairman, Haar’s assumption of that role caused the second meeting to be chaired by a person incapable of executing that office as a matter of law. With respect to the issue of a quorum, as previously noted there were approximately 1,165-1,172 members of the County Committee, and a quorum of 25% was necessary pursuant to the County Bylaws (art IV, § 4) to have a duly constituted meeting on October 14. Proof of the absence of a quorum was provided by notebooks used for sign-in purposes at this second meeting. These notebooks contained the names of 174 attendees, a number substantially less than the 25% required. This objective finding mandates the court to annul all acts at this meeting. Section 39 of Roberts Rules of Order (as incorporated by reference in the County By-laws, *299 art VII) requires that in the absence of a quorum those present have limited functions. They can fix the time to which to adjourn, adjourn, recess, or take measures to secure a quorum. It is compelling that on October 3, 1982, at 2:00 a.m. when the parties agreed there was then no quorum, they consented to arrange a second meeting. There was not even the faintest indication that the parties intended to, or could in fact, waive the necessity for a quorum on the occasion of the second meeting.
In summary, there has been no amendment to the party rules affecting the eligibility of candidates, and a meeting is required for the purpose of electing officers. At such meeting Mr. Greene will function solely as temporary chairman according to party rules and employ practices consistent with the findings of the court.

 Although a count of hands on the vote on the second set showed 190 votes in favor of adoption, 157 against and 15 persons who objected to the process, the lack of a weighted vote tally prevents the court from reporting a determination of the arithmetic result of that vote.